### HENRY WEBER v. WILLIAM MILLER.

1. EQUITY WILL NOT GRANT RELIEF BY INJUNCTION EXCEPT WHERE RIGHTS ARE CLEAR AND HAVE FIRST BEEN ESTABLISHED AT LAW.

   A court of equity will not interfere to restrain a private nuisance where some of the questions in dispute are pending in an action at law in another court; and even when a court of equity has undivided jurisdiction of such questions, it will not grant relief to a party by injunction, unless his rights are clear and have first been established at law.

2. DIVISION OF LOT CONVEYS EASEMENT ESSENTIAL TO ENJOYMENT OF LAND GRANTED.

   Where a drain has been constructed on a parcel of land by the owner thereof, and such parcel of land is afterward divided by the owner into two lots so that said drain is on both lots, and such lots are subsequently conveyed to different purchasers without any reservation as to the use of such drain, each purchaser takes his lot with all the rights that his grantor had with respect to such drain, and burdened with all servitudes that such drain may create, provided said drain is reasonably necessary to the enjoyment of the land granted.

APPEAL.

SWING, J.

This is a case on appeal from the court of common pleas, and is an action for an injunction, wherein plaintiffs asks that defendant may be enjoined from using a certain drain. The following are substantially the facts as agreed upon in part and shown by evidence at the trial.

Weber owns a house and lot fronting twenty-five feet on Addison street and running back fifty feet. Miller owns a house and lot fronting twenty-five feet on Halstead street and running back fifty feet to Weber's lot. Originally these two lots were one and belonged to McNamarra & Connor, who graded said lot and improved the same by erecting two brick dwellings thereon, together with certain drains. The frontage on Halstead street is some twenty feet higher than that on Addison street, and in the rear of the lot on Halstead street, now owned by Miller, a catch basin was placed, with which was connected a drain which ran under ground for some feet, in and upon the lot of Weber, where, about forty-five feet from the front of Weber's lot on Addison street, it emptied into an open gutter, by which the drainage was carried to Addison street over Weber's lot and the sidewalk. On the rear end of Weber's lot was also constructed a catch basin, to which was attached a drain under ground and which connected with the drain from the Halstead street lot a short distance before it empties into the open gutter. These premises so constructed were sold by said McNamarra & Connor to one Mitchell, and said Mitchell sold the lot now belonging to Weber to Weber's grantor in November, 1886, retaining the Halstead lot, which he afterwards conveyed to Miller's grantor. The deeds were all general warranty deeds without reservations of any kind.

The drain in controversy continued to be used by both lot owners until in March or April, 1889, when Weber, who was then as now the owner of the Addison street, lot plugged up the said drain; thereupon one Roth, who was then the owner of the Halstead street lot, brought a suit in the court of common pleas to enjoin Weber from stopping up said drain, in which case the court granted a temporary restraining order, and said cause is still pending in the court of common pleas, and said restraining order is still in force. Subsequent to the bringing of said suit and the granting of said restraining order, said Roth conveyed said Halstead street property to this defendant herein, but said defendant

has never been made a party to said suit. The evidence shows that Miller, through his tenants, has been using this drain as originally designed it should be used, viz.: to carry off the rain water from the roof of the house and the wash and kitchen water. The health officer was frequently called upon to inspect the manner of its use, but found no improper use of the drain. There is no sewer either in Addison or Halstead streets, and the gutters of said streets are used to carry off the rain, wash and kitchen water. The back part of the lot in Halstead street is much lower than the gutter on Halstead street, and this lot could not be drained into Halstead street without virtually detroying the two lower rooms of said house for the purposes for which they are now used as the drainage would have to be carried through them.

It is evident that in order for a proper enjoyment of the lot on Halstead street it is necessary to use this drain in the manner it was originally intended it should be, and as it has been and is now used. And further, that the use of said drain, if without authority in law, works harm to Weber and his property and is a nuisance. Upon these facts and findings two questions arise.

1.  Should the court grant relief by injunction? and,
2.  Do the facts warrant such relief?

As to whether injunction will lie. High on Injunction, 1, page 476, secs. 740 and 741, says: "The concurrent jurisdiction of courts of equity, by the writ of injunction, with courts of law in cases of private nuisance, is ancient and well established. To warrant the interference, a strong case of imperative necessity must appear and the nuisance must be in derogation of rights long previously enjoyed. As a general rule, it is necessary that the person seeking the aid of equity to restrain a private nuisance, should have first established his right at law, and where the right is doubtful and has not been established, the relief will be withheld. Thus, where the complainant has failed to obtain judgment against defendants in an action at law for the nuisance and legal proceedings are still pending, the injunction will be denied. The rule, however, is limited to cases where the right is doubtful or is actually in dispute. And where defendant's right to erect the structure complained of as a nuisance is in dispute and is not clearly established at law, the court will not interfere. Nor will equity interfere where the injury is of a trifling or merely nominal or temporary character. And while a trespass affords no foundation for an injunction, where it is only contingent and temporary, yet if it continues so long as to become a nuisance, equity may properly enjoin. To warrant the exercise of the jurisdiction in restraint of nuisance, the same irreparable injury must be shown as in the case of trespass, and where this does not appear the person will be left to his remedy at law.

He who seeks an injunction against a nuisance is not regarded as having sufficiently estaolished his rights at law by obtaining a judgment, if the action in which the judgment was recovered is still pending upon a writ of review. Nor will equity interfere to restrain a nuisance unless it has undivided jurisdiction over the whole litigation, and where some of the questions in dispute are pending in actions at law, an injunction will not be allowed."

This seems to be the view of the law taken by our Supreme Court, as shown by the following language in the case of *Goodale* v. *Crofton*, 33 O. S., 275, where the court say: "It will suffice to say, the result of all these cases seems to be that when the right is clearly made out and the nuisance established, a court of equity, in case of private nuisance, will interfere to prevent that which violates the right of another in his property in an essential degree."

What effect should the temporary injunction in the court of common pleas in the case of *Roth* v. *Weber*, and its pendency there according to the foregoing rules of law, have on this case?

We do not think that the defense of "pending action" or *res judicata* is good, because it is not between the parties or their privies; but we do think that the principles above quoted from High require us to deny the relief by injunction.

While, as said, the action pending in the court of common pleas is not between the same parties—Roth having transferred his interest to Miller—it is clear that under sec. 5012 of the Rev. Stat., the court would at any time permit Miller to be made a party, when it would then become an action pending between the same parties as to the same matter, and in that event, that court might render a decision different in effect from what might be the decision of this court, or it might decide that case contrary to its own ideas of the rights of the parties out of regard to this court. This should not be.

The remedy of injunction should not be used except when the right is clear, not only as to the original facts, but also as to those which have arisen through litigation. We therefore think that this cause should be disposed of before this court should act by injunction. This being the view of the court, it would follow that on this ground the plaintiff's relief should be denied and his petition dismissed.

But we have thought that inasmuch as the case was tried principally on the question as to whether the defendant had the right to the use of this drain, that we should also express our opinion on this question. It is claimed by counsel for Weber, that when Mitchell, who was then the owner of both lots, conveyed to Weber's grantor by a general warranty deed without reserving any right to the use of the drain, that he parted with his whole title to the whole of the premises. On the other hand, counsel for defendant claim that the drain, being necessary to the enjoyment of the Halstead street lot, and apparent at the time, that Weber's grantor took the Addison street lot subject to this burden. There can be no question as to the law. If Mitchell, instead of selling the Addison street lot had first sold the Halstead street lot, the right to the use of the drain would have been unquestioned; but as to the other matter there is room for grave doubt.

As might be supposed, this question has frequently been before the courts; and both in this country and in England the decisions are in conflict. Counsel on either side have cited us to a number of decisions; but it is not our purpose to review them. Mr. Washburn, in his work on real property, vol. 2, chapter on Easements, p. 274, *et seq.*, 3rd ed., considers this question and reviews most all of the cases, and with his summing up of the law we agree.

At page 288, Mr. Washburn says: "It is stated as a general proposition, that if there be a severance of a heritage into two parts, in respect to which there had been continuous and apparent easement used by the owner, such an easement would pass by implication with the dominant estate." And in support of this he cites the case of *Nicholos* v. *Chamberlain*, Cro. Jac., 121; and *Pyer* v. *Carter*, 40 E. L. and Eq., 410; although this latter case is impugned by *Suffield* v. *Brown*, 10 Jur. N. S., 111; of which he afterwards makes note; and on page 291 the same author says: "This adaptation of the several parts of one or more estates by the same owner in reference to the advantageous occupation of the same, is called in the French law '*Destination du pere defamille*,' and would have the same effect if the owner were to convey one or two parts and retain the other in erecting an easement or servitude in favor of or upon the part so conveyed, as if it were expressly declared in writing to exist. The limitation, perhaps, which should be added in order to apply this doctrine to the English and American law, is, that what is thus claimed as an easement must be reasonably necessary to the enjoyment of that law to which it is sought to make it appendant."

Our own Supreme Court in the case of *Shields* v. *Titus*, 46 O. S., 539, use the following language: "Each purchaser took his land with all the rights his grantor had with respect to it and burdened with the servitudes he imposed upon it;" and again, quoting from Washburn on Easements, "When an easement is secured to a dominant estate and designed to benefit the same, in whomsoever's hands it may be, it will, as a general proposition, inure to the benefit of the owner of any part of the same into which it may be divided, provided the

burden upon the servant estate intended to be created is not thereby enhanced."

In this case it is clear that this drain was made by the owner for the beneficial enjoyment of both houses and that it was necessary to the enjoyment of the Halstead street house, and that no other drain could be constructed without serious loss to said property.

The relief asked by plaintiff will therefore be denied and the petition dismissed.

The defendant having filed an answer and cross-petition asking that plaintiff be restrained from obstructing said drain, an injunction will be granted as prayed for.

*Ferris, Morrow & Oldham*, for Weber.

*A. S. Longley*, for Miller.